## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DR. XIOMARA J. PORRAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Case No. CIV-21-0631-F |
| | ) | |
| NORTH OKLAHOMA COUNTY | ) | |
| MENTAL HEALTH d/b/a | ) | |
| NORTHCARE, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This order addresses two motions in this employment-related action: defendant North Oklahoma County Mental Health d/b/a Northcare's partial motion to dismiss (doc. no. 6)[1] and plaintiff Dr. Xiomara J. Porras's motion to strike affirmative defenses from Northcare's answer (doc. no. 9).[2]

For the reasons set out below, defendant's partial motion to dismiss is denied, and plaintiff's motion to strike affirmative defenses is granted in part and denied in part.

### I.  Defendant's Partial Motion to Dismiss

*Doc. no. 6*

Defendant moves to dismiss plaintiff's race and national origin discrimination claims, as well as her retaliation claims.  (The motion does not challenge the hostile work environment and Americans with Disabilities Act claims.)

---

[1] Response brief, doc. no. 8.  Reply brief, doc. no. 10.

[2] Response brief, doc. no. 11.  Reply brief, doc. no. 14.

Defendant moves under Rule 12(b)(6), Fed. R. Civ. P.  As stated in Rule 12(b), a motion asserting defenses under this rule must be filed before the moving party files a responsive pleading.  Because a partial answer was filed prior to the motion to dismiss, plaintiff argues the motion should not have been brought under Rule 12(b)(6) and should have been brought under Rule 12(c), Fed. R. Civ. P.[3]  Plaintiff concedes, however, that ultimately this procedural distinction makes no difference because, under Rule 12(b)(6) or Rule 12(c), the same plausibility standard applies. *See* Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1160 (10th Cir. 2000) ("A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6).").  Accordingly, no matter how the motion is best characterized, it is evaluated under the standards of Rule 12(b)(6).

<u>Standards</u>

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face.  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007).  To survive a motion to dismiss, a plaintiff must nudge his claims across the line from conceivable to plausible.  *Id.* The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims.  Ridge at Red Hawk, 493 F.3d at 1177.

In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. *Id.* Pleadings that are no more than legal conclusions are not entitled to the

---

[3] A "Partial Answer of Defendant Northcare" was filed on June 25, 2021.  Doc. no. 5.  The answer notes Northcare is "simultaneously filing" its partial motion to dismiss.  *Id.* at p. 1.  The motion to dismiss was then filed at doc. no. 6.

assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009).  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  *Id*. The court will disregard mere "labels and conclusions" and "[t]hreadbare recitals of the elements of a cause of action" to determine if what remains meets the standard of plausibility.  Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*  at 679.

## Summary of Defendant's Arguments

The motion to dismiss challenges plaintiff's claims of race and/or national origin discrimination, as well as plaintiff's retaliation claims.  (For convenience, when this order refers to matters related to race, it includes matters related to race and/or national origin.)  These claims are brought under Title VII of the Civil Rights Act, under 42 U.S.C. § 1981, and under the Oklahoma Anti-Discrimination Act (OADA).  They are alleged in counts I, II and IV[4] of the complaint,[5] respectively.

With respect to the discrimination claims, defendant argues the complaint lacks specifics and thus fails to plausibly allege facts which give rise to an inference of discrimination.  *See* DePaula v. Easter Seals El Mirador, 859 F.3d 957, 969-70 (10th Cir. 2017) (applying the McDonnell Douglas[6] framework at the summary judgment stage, the court noted that because the prima facie test varies depending on the context of the claim, the critical prima facie inquiry in all cases is whether

---

[4] The complaint incorrectly numbers plaintiff's OADA claims as a second Count III.  To avoid confusion, the court refers to the OADA count as the claim alleged in count IV.

[5] The petition as filed in the state court in this removed case will be referred to as the complaint.

[6] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination).

As for the retaliation claim, defendant argues that this claim fails because plaintiff's only alleged protected opposition to discrimination was a complaint (or complaints) to her supervisors in 2019. In addition, defendant argues that no allegations plausibly show that plaintiff's termination was retaliatory. In other words, defendant argues that no allegations support causation.

<u>The Allegations</u>

The following allegations are pertinent.

-- Plaintiff Dr. Porras is a physician who was born in Nicaragua. Doc. no. 1, ¶ 6.

-- Plaintiff was trained and licensed in Nicaragua. Id. at ¶ 8, n. 1.

-- Plaintiff worked as a Board Certified Nurse Practitioner for Northcare from around June of 2018 until she was involuntarily terminated around November 1, 2019. *Id*. at ¶ 8. During all periods of her employment, plaintiff was qualified for her job and performed satisfactorily. *Id*.

-- Plaintiff was supervised by Dr. Peter Kowalski. *Id*. at ¶ 9.

-- Brandi Strange, a co-worker, was employed by defendant as a nurse practitioner. *Id*. at ¶ 10.

-- On a "near daily basis": (A) Dr. Kowalski and Ms. Strange made fun of plaintiff's accent and her inability to speak perfect English; (B) Dr. Kowalski joked about plaintiff's Hispanic culture, including commenting that women from plaintiff's country were promiscuous and were more promiscuous than women from the United States; and (C) Ms. Strange would pretend to draw circles around plaintiff and say "English barrier." Ms. Strange engaged in the described conduct in the presence of Dr. Kowalski and other supervisors, who, in response, would laugh at plaintiff. *Id*. at ¶¶ 11-12.

-- Plaintiff opposed race and national origin discrimination when, in September of 2019, she complained to her supervisors about the conduct described above (the conduct described in ¶¶ 11-12 of the complaint). *Id*. at ¶ 14.

-- Plaintiffs' position remained open after her termination, until it was filled by another. *Id*. at ¶ 25.

-- Significant factors in the decision to terminate plaintiff included her race and national origin, as well as plaintiff's opposition to race and national origin discrimination. *Id.* at ¶ 27. Plaintiff's opposition to race and national origin discrimination were also "but for" causes of her termination. *Id*.

<u>The Race and/or National Origin Discrimination Claims</u>

Defendant contends too few specifics are alleged to give rise to an inference of race or national origin discrimination. Defendant argues that a number of potential facts (such as who fired plaintiff, or whether other nurse practitioners outside plaintiff's protected class kept their jobs in similar circumstances) are not alleged.

In response, plaintiff points to allegations that she belongs to a protected class, that she was qualified for her position, that she was discharged, and that her position remained open after her termination. Plaintiff also argues that the complaint identifies plaintiff's supervisor and a co-worker as people who, on nearly a daily basis, engaged in conduct and comments which targeted plaintiff based on her accent and country of origin.

The allegations to support an inference of discrimination are thin, but they do clear the plausibility bar. The alleged derogatory comments were not rare. In fact,

they are alleged to have occurred almost daily.[7]  Furthermore, should it turn out that Dr. Kowalski was the decision-maker with respect to plaintiff's termination, then the complaint has alleged derogatory remarks, on almost a daily basis, by the decisionmaker.  Finally, while defendant is correct that the complaint does not identify the individual who made the decision to terminate plaintiff, plaintiff may not know the decisionmaker's identity at this stage.  *See* Khalik v. United Air Lines, 671 F.3d 1188, 1193 (10th Cir. 2012) (in employment discrimination cases, employee may not know who actually fired her).

The race and/or national origin discrimination claims will not be dismissed.

The Retaliation Claim

Defendant contends insufficient facts are alleged to show protected activity for purposes of the retaliation claim.  Defendant argues the complaint does not allege to whom plaintiff reported the derogatory comments and conduct of Dr. Kowalski or Ms. Strange.  The complaint, however, alleges that plaintiff complained to her supervisors, at least one of whom is identified.  The complaint also gives a fair amount of detail about the nature of the comments and conduct about which plaintiff complained.  The complaint plausibly alleges protected activity.

Defendant also argues that causation is not adequately alleged for purposes of the retaliation claim.  The complaint alleges protected activity in September of 2019, followed by plaintiff's termination around November 1, 2019.  Depending on the exact date of plaintiff's protected activity, the period between a complaint and termination could be as short as just over one month (September 30 to November 1) or as long as two months (September 1 to November 1).  This period is indeterminate

---

[7] As a general proposition, derogatory comments do not constitute evidence of discriminatory animus if the comments are stray remarks in the workplace, or are comments made by non-decisionmakers.  Hysten v. Burlington Northern Santa Fe Ry. Co., 415 Fed. Appx. 897, 911 (10th Cir. 2011), unpublished, citing Clearwater v. Independent School District No. 166, 231 F.3d 1122, 1126 (8th Cir. 2000).

with respect to whether, standing alone, it could establish causation for a retaliation claim. *See* Conroy v. Vilsack, 707 F.3d 1163, 1181-82 (10th Cir. 2013) ("where along the temporal line beyond one and one-half months but short of three months the adverse action's timing ceases to be sufficient, standing alone, to establish the requisite causal inference[,] is less than pellucid"). Given the temporal relationship between the alleged protected activity and plaintiff's termination, causation is plausibly alleged.

The retaliation claim will not be dismissed.

Conclusion as to Northcare's Motion to Dismiss

After careful consideration, Northcare's motion to dismiss is **DENIED**.

II. Plaintiff's Motion to Strike Affirmative Defenses

*Doc. no. 9*

Plaintiff moves to strike Northcare's affirmative defenses numbered 5[8]-7, 12-21 and 24. Rule 12(f), Fed. R. Civ. P., permits a court to strike an insufficient defense. The court applies the pleading standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Defense nos. 5, 6 and 7. Plaintiff challenges defendant's contributory negligence defenses on the ground that contributory negligence is not a defense to liability for purposes of the employment-related claims alleged in this action.

In response, defendant explains that it does not assert these defenses to oppose liability but merely as a means to address the possibility of other sources of plaintiff's alleged emotional distress damages. This argument is consistent with how

---

[8] Defense no. 5 is not included in the list of challenged defenses at doc. no. 9, pp. 2-3, however, defense no. 5 is included in the discussion of challenged defenses, *id.* at p. 5.

defenses 5 through 7 are actually alleged, i.e. as defenses specific to "damages."[9] Because these defenses are alleged as defenses to damages rather than liability and are otherwise plausible, the court declines to strike them.  The motion will be denied with respect to defenses 5, 6 and 7.

Defense no. 12.  Plaintiff challenges defendant's <u>Faragher/Ellerth</u> defense.

In <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998), and <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742 (1998), the Court clarified the circumstances in which an employer can be held liable for a supervisor's harassing conduct. <u>Dees v. Johnson Controls World Services, Inc.</u>, 168 F.3d 417 (10th Cir. 1999), describes the <u>Faragher/Ellerth</u> defense as follows.  An employer is vicariously liable for harassment committed by a supervisor when the harassment results in a tangible employment action; when no such tangible employment action occurs, however, the employer's vicarious liability is subject to a two-part affirmative defense.  *Id*.  The employer can escape liability by demonstrating (i) that it took reasonable steps to prevent harassment and to remedy the harassing conduct promptly once it was brought to the employer's attention, and (ii) that the victimized employee unreasonably failed to avoid harm or utilize any remedial opportunities made available by the employer.  *Id*. at 422. !

Plaintiff argues the <u>Faragher/Ellerth</u> defense only applies to harassment claims that do not culminate in a tangible adverse action, a condition that is not satisfied here because plaintiff was terminated.  Plaintiff concedes defendant could assert this defense by arguing that the termination was unrelated to the hostile working environment.  Plaintiff argues, however, that no facts are alleged to support

---

[9] Plaintiff also argues that damages in a Title VII case flow from a finding of intentional discrimination, so that these defenses are more correctly understood as a general denial of the damages claimed by the plaintiff rather than as affirmative defenses.  The court makes no finding as to whether these defenses (or any others challenged in the motion to strike) are properly understood as true affirmative defenses.

such a position.  In her challenge to defense no. 12, plaintiff also complains that defendant cannot deny that plaintiff reported the alleged discrimination while defendant also contends that it exercised reasonable care to promptly correct any discriminatory or retaliatory conduct.

Plaintiff's challenges to defense no. 12 are rejected.  This defense is set out with supporting facts, and it alleges that plaintiff's termination was not related to her allegations of harassment. In addition, defendant is entitled to allege alternative theories.  The motion will be denied with respect to defense no. 12.

Defense no. 13.  Plaintiff challenges the "direct threat" defense.  This defense is expressly alleged for purposes of plaintiff's Americans with Disabilities Act claim.  Plaintiff argues that to rely on this defense, defendant, prior to terminating plaintiff's employment, must have assessed the risks plaintiff posed.  Plaintiff argues that if defendant conducted such an assessment then defendant should allege when and how it did so, the results of the assessment, etc.

The court will not require this information to be alleged at this stage. Furthermore, earlier in the answer, defendant alleges that plaintiff had legitimate non-discriminatory reasons for terminating plaintiff's employment, one of them being "patient safety."  Doc. no. 5, p. 9, ¶ 9.  The motion will be denied with respect to defense no. 13.

Defense no. 14.  Plaintiff challenges defendant's failure to mitigate defense. Plaintiff contends defendant should have alleged facts showing suitable positions were available which plaintiff could have discovered and for which she was qualified.  Plaintiff also argues that if this defense is stricken and defendant provides a good faith basis to assert it in the future, this defense could be added back into the case at that time.

A Title VII plaintiff has a duty to mitigate his or her damages, and the court will not require defendant to plead more details regarding this defense. The motion will be denied with respect to defense no. 14.

Defense nos. 15, 16, 17 and 18. Plaintiff challenges the defenses which rest on: the after-acquired evidence doctrine (no. 15), estoppel and/or waiver (no. 16), failure to exhaust administrative remedies (no. 17) and limitations (no. 18). Each of these defenses alleges that plaintiff's claims "may" be barred or give rise to these defenses. In addition, not one of these defenses includes any supporting facts.[10] Accordingly, plaintiff contends these defenses are mere placeholders, intended to preserve the possibility that such defenses might later be relevant if evidence is uncovered to support them.

These defenses are hypothetical. Moreover, defendant does not contend that these defenses meet the Twombly standard. Rather, defendant seeks leave to amend these defenses if the court remains firm in its position (as taken in other cases and as now taken in this case) that Twombly's plausibility standard applies to affirmative defenses.[11] These defenses are not plausible as currently alleged. They are essentially cut and paste averments. The motion will be granted as to them although leave to amend will be granted.

Defense no. 19. Plaintiff challenges the good faith defense. Plaintiff concedes good faith may be recognized as an affirmative defense to punitive damages liability. Plaintiff argues, however, that defense no. 19, by its terms, is not limited to an affirmative defense against punitive damages.

---

[10] The failure to exhaust defense (no. 17) alleges there is a "possibility" that plaintiff has failed to exhaust her claims, as the claims in her complaint could differ from those included in her charge of discrimination. However, this defense does not describe any way in which plaintiff's claims actually do differ from those in her charge.

[11] Footnote 9 of defendant's response brief (doc. no. 11, p. 18) requests leave to amend these four defenses, in the event the court applies the Twombly standard to affirmative defenses.

Defendant's brief describes this defense as one to punitive damages. In addition, defendant cites various allegations within its answer which arguably refer to its good faith and bolster this defense. The motion will be denied with respect to the good faith defense.

Defense nos. 20, 21. Plaintiff's challenge to the constitutional defenses is rejected for lack of developed argument.[12] *See* Wall v. Astrue, 561 F.3d 1048, 1065 (10th Cir. 2009) (where an appellant lists an issue, but does not support the issue with argument, the issue is waived on appeal); Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999) (district court is free to disregard arguments that are not adequately developed).

Defense no. 24. Plaintiff challenges defense no. 24, which purports to adopt and incorporate defendant's arguments raised in its motion to dismiss. This is not a proper affirmative defense. The motion will be granted as to this defense without leave to amend.

Conclusion as to Plaintiff's Motion to Strike Affirmative Defenses

After careful consideration, the motion to strike is **GRANTED IN PART** and **DENIED IN PART**, as follows.

The motion is **GRANTED** with respect to Northcare's defenses numbered 15, 16, 17 and 18. These defenses are **STRICKEN** from Northcare's answer and will remain stricken absent a successful amendment as set forth below. If Northcare wishes to file an amended answer to support these defenses, it may do so for that limited purpose only, subject to the strictures of Rule 11, which apply as fully to an answer as to a complaint. Any such amended answer is **DUE** seven days from the

---

[12] Defenses 20 and 21 appear to relate to the size of punitive damages awards, which is limited by due process considerations. These defenses are listed among those challenged near the beginning of the motion, but, unlike the other challenged defenses, no argument specific to these defenses is presented.

date of this order.  The motion is also **GRANTED** with respect to defense no. 24, which is **STRICKEN** without leave to amend.

The motion is **DENIED** with respect to Northcare's defenses numbered 5, 6, 7, 12, 13, 14, 19, 20 and 21.

IT IS SO ORDERED this 1st day of November, 2021.


STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE


21-0631p002 rev .docx